E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KELLY LAROCQUE (Cal. Bar No. 337912)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3308
     Facsimile: (213) 894-0141
     E-mail:    kelly.larocque@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 23-00049-SPG |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO MOTION TO SUPPRESS; DECLARATION OF G. SHRUM |
| v. | |
| ALVARO ESTUARDO SANTACRUZ, | Hearing Date: November 8, 2023<br>Hearing Time: 9:30 AM |
| Defendant. | Location:    Courtroom of the<br>             Hon. Sherilyn Peace<br>             Garnett |
| | Indictment:    April 26, 2023<br>FPC:           TBD<br>Trial:         January 9, 2023<br>Last Day STA: January 23, 2023 |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Kelly Larocque, hereby files its opposition to defendant Alvaro Estuardo Santacruz's motion to suppress, filed on October 4, 2023 (ECF No. 21).

     This opposition is based upon the attached memorandum of points and authorities, the attached declaration, the files and records in

this case, and such further evidence and argument as the Court may permit.

Dated: October 17, 2023         Respectfully submitted,

                                E. MARTIN ESTRADA
                                United States Attorney

                                MACK E. JENKINS
                                Assistant United States Attorney
                                Chief, Criminal Division

                                _____/s/_____
                                KELLY LAROCQUE
                                Assistant United States Attorney

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

# TABLE OF CONTENTS

<u>DESCRIPTION</u>                                                      <u>PAGE</u>

**Contents**

TABLE OF AUTHORITIES...............................................i

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.   INTRODUCTION..................................................1

II.  STATEMENT OF FACTS............................................1

III. ARGUMENT......................................................5

    A.   Deputy Shrum Did Not Unlawfully Prolong the Traffic
        Stop.........................................................5

        1.   The Law Gives Officers Leeway in Addressing the
            "Mission" of a Traffic Stop and Attendant Safety
            Concerns...............................................5

        2.   Deputy Shrum Made "Ordinary Inquiries" and Took
            "Negligibly Burdensome Precautions" for His
            Safety When He Asked for Defendant's Identity........7

        3.   Any Endeavor Potentially Beyond the "Mission" of
            the.....................**Error! Bookmark not defined.**

Initial Stop Did Not Add Time to the Stop.................8

        4.   Asking Whether Defendant Was on Probation Was Not
            an...................................................10

Unrelated Inquiry and Did Not Add Time to the Stop.......10

        5.   Within Five Minutes, Deputy Shrum Developed
            Reasonable...........................................11

Suspicion that Defendant Violated California Law........11

        6.   Deputy Shrum Learned Additional Facts that
            Further..............................................13

Justified Extending the Stop............................13

    B.   Deputy Shrum Lawfully Searched the Black Adidas
        Backpack....................................................14

        1.   Deputy Shrum Had Probable Cause to Search the
            Backpack.............................................14

        2.   Even if Deputy Shrum Did Not Have Probable Cause
            to Search the Backpack, a Search of the Backpack

i

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                        PAGE

        Was Reasonably Within the Scope of the Driver's
        Consent..........................................................15

    C.   The Exclusionary Rule Should Not Apply Because Deputy
        Shrum Did Not Act Deliberately, Recklessly, or with
        Gross Negligence.................................................16

    D.   An Evidentiary Hearing Is Not Warranted....................16

IV.  CONCLUSION...................................................17

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

STATUTES

Cal. Pen. Code § 836                                           12-13, 13

California Penal Code § 148.9                                       12, 5

California Vehicle Code § 24252                              1, 2, 3, 4, 5

CASES

Davis v. United States,
   564 U.S. 229 (2011) ......................................... 16

Heien v. North Carolina,
   574 U.S. 54 (2014) .......................................... 16

Herring v. United States,
   555 U.S. 135 (2009) ......................................... 16

Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt Cty.,
   542 U.S. 177 (2004) .......................................... 8

Illinois v. Gates,
   462 U.S. 213 (1983) ......................................... 14

Kaley v. United States,
   571 U.S. 320 (2014) ......................................... 12

Kansas v. Glover,
   140 S. Ct. 1183 (2020) ...................................... 12

Maryland v. Wilson,
   519 U.S. 408 (1997) .......................................... 7

United States v. Campbell,
   26 F.4th 860 (11th Cir. 2022) ................................ 6

United States v. Crenshaw,
   2020 WL 6873422 (N.D. Cal. Nov. 23, 2020) ................ 10, 8

United States v. Diaz-Castaneda,
   494 F.3d 1146 (9th Cir. 2007) ................................ 8

United States v. Evans,
   786 F.3d 779 (2015) ......................................... 11

United States v. Howell,
   231 F.3d 615 (9th Cir. 2000) ................................ 16

i

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

United States v. Hylton,
   30 F.4th 842 (9th Cir. 2022) .................................. 6

United States v. Landeros,
   913 F.3d 862 (9th Cir. 2019) .............................. 7, 8

United States v. Mayo,
   394 F.3d 1271 (9th Cir. 2005) ............................... 11

United States v. Mayville,
   955 F.3d 825 (10th Cir. 2020) ................................ 6

United States v. Mendez,
   476 F.3d 1077 (9th Cir. 2007) ............................. 9-10

United States v. Rodriguez,
   575 U.S. 348 (2015) ...................... 10, 5-6, 6, 7, 8, 9

United States v. Taylor,
   60 F.4th 1233 (9th Cir. 2023) ................................ 6

United States v. Valdez-Vega,
   738 F.3d 1074 (9th Cir. 2013) (en banc) ................. 11-12

Wyoming v. Houghton,
   526 U.S. 295 (1999) ...................................... 14, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Deputies did not transform a lawful traffic stop into an unlawful seizure because any purported prolongation was an ordinary inquiry incident to traffic stops, did not add time to the stop, or was supported by independent reasonable suspicion.  While addressing only the mission of his stop and related safety concerns, Orange County Sheriff's Deputy Gregory Shrum came to learn facts supporting that defendant provided false identification to a peace officer and that the driver unlawfully possessed a switchblade, drugs, and drug paraphernalia.  Also, Deputy Shrum's search of defendant's black Adidas backpack —which revealed a mail carrier uniform, and dozens of pieces of stolen mail and driver's licenses —was justified because it was supported by probable cause.  The search was also reasonably within the scope of the driver's consent to search the car.  In any event, the exclusionary rule should not apply because Deputy Shrum did not act deliberately, recklessly, or with gross negligence.

Because Deputy Shrum acted lawfully, the Court should deny defendant's motion to suppress the evidence in this case.

### II.   STATEMENT OF FACTS

In the middle of the night on September 1, 2022, Orange County Sheriff's Deputy Gregory Shrum pulled over a car with a broken headlight, a violation of California Vehicle Code § 24252(a)(1). (Def. Ex. A at 5, ECF No. 21-3.)  Alvaro Estuardo Santacruz ("defendant") was the front seat passenger.  (Id.)  Deputy Shrum approached the car and asked the driver for his license.  (Def. Ex. B at 00:49, ECF No. 21-4.)  While the driver was retrieving his license, Deputy Shrum asked what the driver and defendant were up to,

1  and asked defendant, "Do you have an ID, sir?"  (Id. at 00:50 to

2  01:09.)  After defendant denied having a license on him, Deputy Shrum

3  explained why he pulled over the car and discussed the car's

4  potential electrical issues with the driver, while simultaneously

5  removing an index card and pen from his pocket.  (Id. at 01:09 to

6  01:48.)  Deputy Shrum then handed defendant the index card and pen,

7  and asked him, "Can you just write your first name, last name, and

8  date of birth for me?"  (Id. at 01:49.)  Defendant agreed.

9      While defendant wrote down his information, Deputy Shrum and the

10 driver continued to discuss the car's potential electrical problems,

11 and chatted about Uber Eats and the weather.  (Def. Ex. B at 01:50 to

12 02:52.)  Deputy Shrum acknowledged a knife in the car while defendant

13 continued to write down his information.  (Id. at 02:53.)  He then

14 asked if there was anything else "crazy" in the car and whether the

15 driver or defendant were on probation or parole.  (Id. at 02:54 to

16 03:17.)  After the driver and defendant answered "no," defendant

17 handed the index card and pen back to Deputy Shrum, who then asked

18 defendant to also include his date of birth.  (Id. at 03:18.)

19 Defendant wrote down a date of birth, then handed the index card and

20 pen to Deputy Shrum.  (Id. at 03:19 to 04:09.)  Deputy Shrum walked

21 back to his patrol car to run record checks on the driver and

22 defendant.  (Id. at 04:10.)

23      Only about three minutes and 20 seconds elapsed between Deputy

24 Shrum's initial encounter with the driver and initiating the record

25 checks —about two minutes and 20 seconds of which defendant spent

26 voluntarily writing information on an index card, which was found to

27 be false.  (Def. Ex. B at 00:49 to 04:10.)

28

Deputy Shrum ran standard record checks in his patrol vehicle, which took about one minute and 20 seconds. (Def. Ex. B at 04:45 to 06:04.) He input the driver and defendant's names into a database called "Elete," which generates, among other things, a person's driver's license or booking photograph and indicates whether that person is on probation or parole, is a registered sex offender, or has outstanding warrants. (Shrum Decl. ¶ 3.) The database did not yield any results from the information that defendant provided. (Id. at ¶ 4.) In Deputy Shrum's training and experience, it is uncommon for a name to not generate any results. (Id.)

Suspecting that defendant provided false identification, Deputy Shrum approached defendant again and asked him whether he ever had a ticket, police contact, or California identification (to rule out reasons that he was not discoverable in the database). (Def. Ex. B at 06:11 to 06:36; Shrum Decl. ¶ 5.) Defendant confirmed that he has had a California identification issued. (Def. Ex. B at 06:11 to 06:36.) Deputy Shrum also asked defendant to write his information down again on the index card, and defendant agreed. (Id. at 06:22.) This time, defendant provided a different name (Alan Mauricio Santacruz versus Alan Mauricio) and a different date of birth (10/01/1989 versus 10/21/1989) than he provided Deputy Shrum the first time, which were also found to be false. (Id. at 12:57 to 13:20.)

Deputy Shrum performed record checks with the new information provided and once again could not find defendant in the system. (Def. Ex. B at 07:40 to 08:20; Shrum Decl. ¶ 7.) Continuing to suspect that defendant provided false information, (id.), Deputy Shrum asked the driver to step out of car. (Def. Ex. A at 5.)

1  Deputy Shrum also asked defendant to step out of the car and for

2  consent to search his person.  (Id.)  Defendant responded, "Yes, sir,

3  go ahead."  (Id.; Def. Ex. B at 11:57 to 11:59.)  Deputy Shrum found

4  seven keys (later determined to be postal keys), mail addressed to a

5  P.C., and a driver's license belonging to a Y.A.  (Def. Ex. A at 5.)

6      Additional deputies arrived, and the driver and defendant sat

7  unhandcuffed on the curb.  (Def. Ex. B at 12:52, 13:13.)  In plain

8  view, Deputy Shrum spotted a "straw and torch" inside the car.  (Id.

9  at 13:35 to 13:43.)  Deputy Shrum recognized the straw as a "tooter,"

10  which he knows is commonly used to inhale narcotics.  (Shrum Decl.

11  ¶ 8.)  He recognized the torch as a butane lighter, which he knows to

12  be a preferred lighter among drug users.  (Id. at ¶ 9.)

13      The driver gave Deputy Shrum consent to search his car.  (Def.

14  Ex. A at 5; Def. Ex. B at 14:54 to 14:56.)  Inside the car, Deputy

15  Shrum found an unlawful switchblade, suspected fentanyl, and a glass

16  pipe with a bulbous end.  (Def. Ex. A at 5-6.)  Deputy Shrum also

17  found a black Adidas backpack in the backseat containing dozens of

18  pieces of mail addressed to various individuals, California driver's

19  licenses containing the information of different individuals (many of

20  which appeared altered), a United States Postal Service ("USPS")

21  mailbag, and a USPS mail carrier uniform.  (Def. Ex. A at 6-11.)

22  Defendant told Deputy Shrum that the black Adidas backpack was his.

23  (Def. Ex. A at 6; Def. Ex. B at 28:11 to 28:26.)  Deputy Shrum later

24  discovered that defendant was wearing shorts that USPS mail carriers

25  typically wear.  (Def. Ex. A at 6.)

26      Before the search of the car, the driver told deputies that

27  defendant told him he had warrants.  (Def. Ex. B at 13:26 to 13:32.)

28  Deputies ultimately determined defendant's true identity and

4

confirmed that defendant had an outstanding bench warrant for his arrest.  (Def. Ex. A at 5.)  Deputies arrested defendant on the bench warrant.  (Id. at 6.)

**III. ARGUMENT**

Any purported prolongation was an ordinary inquiry incident to traffic stops, did not add time to the stop, or was supported by independent reasonable suspicion.  Also, the search of the black Adidas backpack was justified because it was supported by probable cause and reasonably within the scope of the driver's consent to search the car.  In any event, the exclusionary rule should not apply because Deputy Shrum acted reasonably and in good faith.

**A.  Deputy Shrum Did Not Unlawfully Prolong the Traffic Stop**

The traffic stop was lawful and did not last longer than necessary.  Deputy Shrum expanded the scope of the stop only after developing reasonable suspicion that defendant falsely identified himself to a peace officer, in violation of California Penal Code § 148.9.  Deputy Shrum also learned that there were drugs, drug paraphernalia, and a switchblade in the car, and learned that there was a warrant for defendant's arrest, further justifying an extended stop.

1.  The Law Gives Officers Leeway in Addressing the "Mission" of a Traffic Stop and Attendant Safety Concerns

An otherwise lawful traffic stop becomes unlawfully prolonged only if (1) officers make unrelated inquiries aimed at investigating ordinary criminal wrongdoing that (2) adds time to the stop and (3) is not independently justified by reasonable suspicion.  See generally United States v. Rodriguez, 575 U.S. 348 (2015) (holding that "a police stop exceeding the time needed to handle the matter

1   for which the stop was made" is an unreasonable seizure).  The

2   "tolerable duration" of a traffic stop includes the time that it

3   should take officers to address the "mission" of the stop.  Id.  That

4   "mission" ordinarily includes "determining whether to issue a traffic

5   ticket" and performing "ordinary inquiries," such as "checking the

6   driver's license, determining whether there are outstanding warrants

7   against the driver, and inspecting the automobile's registration and

8   proof of insurance."  Id. at 355.  But this list is non-exhaustive as

9   any measure related to "ensuring that vehicles on the road are

10   operated safely and responsibly," and attending to related safety

11   concerns is permissible.  Id.

12       The Supreme Court recognizes that traffic stops are "especially

13   fraught with danger to police officers."  Rodriguez, 575 U.S. at 356

14   (quoting Arizona v. Johnson, 555 U.S. 323, 330 (2009)).  As such, an

15   officer may "take certain negligibly burdensome precautions in order

16   to complete his mission safely."  Id.  These precautions include

17   asking "questions about travel plans," United States v. Campbell, 26

18   F.4th 860, 885 (11th Cir. 2022), and asking questions about prior

19   arrests and whether there are weapons in the vehicle, United States

20   v. Taylor, 60 F.4th 1233, 1239 (9th Cir. 2023).  Permissible

21   precautions also include running criminal history checks on drivers,

22   as well as passengers. United States v. Hylton, 30 F.4th 842, 849

23   (9th Cir. 2022) (holding that a "criminal history check is a

24   negligibly burdensome precaution required for officer safety");

25   United States v. Mayville, 955 F.3d 825, 830 (10th Cir. 2020)

26   (holding that "an officer's decision to run a criminal-history check

27   on an occupant of a vehicle after initiating a traffic stop is

28   justifiable" (emphasis added)).

2. **Deputy Shrum Made "Ordinary Inquiries" and Took "Negligibly Burdensome Precautions" for His Safety When He Asked for Defendant's Identity**

Here, defendant does not contest that Deputy Shrum was justified in pulling over the car.  Instead, defendant takes issue with Deputy Shrum subsequently asking for defendant's identification.  However, a simple request for a passenger's identity is an ordinary inquiry incident to a traffic stop and a "negligibly burdensome precaution[] that an officer may take to complete his mission safely."  Taylor, 60 F.4th at 1239 (cleaned up) (quoting Rodriguez, 575 U.S. at 355–56.) An officer is entitled to gain understanding and control of a scene, particularly a scene in which he is outnumbered and that is "especially fraught with danger to police officers."  Rodriguez, 575 U.S. at 356 (quoting Johnson, 555 U.S. at 330).  By asking for a passenger's identity, an officer may glean, among other things, whether that person is reluctant to comply with the officer's request and whether the person has a violent criminal history.  These facts help officers evaluate scene safety.  If an officer, as a matter of course, is entitled to order a passenger out of a car as a precautionary measure (Maryland v. Wilson, 519 U.S. 408, 410 (1997)), then an officer must be entitled to take an even more minimally intrusive measure of simply asking for a passenger's identity.

Defendant's reliance on United States v. Landeros, 913 F.3d 862 (9th Cir. 2019) is misplaced because Landeros is distinguishable. (Mot. to Suppress at 1, ECF No. 21.)  The Court in Landeros held that officers may not extend a stop to investigate the identity of a passenger who repeatedly refuses to identify himself.  Landeros, 913 F.3d at 864.  But it does not preclude officers from simply asking for a passenger's identity.  See id.  The Court in Landeros

7

1    emphasizes this distinction: "Regardless of whether the <u>first</u> request
2    for [defendant's] identification was lawful, law enforcement's
3    refusal to take 'no' for an answer was not."  <u>Id.</u> at 870.  This
4    distinction is consistent with Supreme Court and Ninth Circuit
5    precedent, which holds that officers "may ask people who have
6    legitimately been stopped for identification without conducting a
7    Fourth Amendment search or seizure."  <u>United States v. Diaz-</u>
8    <u>Castaneda</u>, 494 F.3d 1146, 1152 (9th Cir. 2007); <u>see also</u> <u>Hiibel v.</u>
9    <u>Sixth Judicial Dist. Ct. of Nev., Humboldt Cty.</u>, 542 U.S. 177, 185
10   (2004) ("In the ordinary course, a police officer is free to ask a
11   person for identification without implicating the Fourth
12   Amendment.").  These holdings have survived <u>Rodriguez</u>.  <u>See, e.g.,</u>
13   <u>United States v. Crenshaw</u>, 2020 WL 6873422, *4 (N.D. Cal. Nov. 23,
14   2020) (citing <u>Diaz-Castaneda</u> for this proposition, post-<u>Rodriguez</u>).
15   Therefore, Deputy Shrum did not violate defendant's Fourth Amendment
16   rights when he simply asked for defendant's identification.

17         3.   <u>Deputy Shrum's Questions to Defendant Did Not Add Time</u>
18              <u>to the Stop</u>

19         Even if the Court concludes that asking for a passenger's
20   identity is outside the purview of a traffic stop and impermissible
21   (it is not), Deputy Shrum's question did not create an unlawful
22   seizure because it did not add time to the stop.  <u>See</u> <u>Rodriguez</u>, 575
23   U.S. at 348 (holding that a traffic stop becomes unlawfully prolonged
24   if officers both take measures aimed at detecting ordinary criminal
25   wrongdoing <u>and</u> add time to the stop).  Unlike the defendant in
26   <u>Landeros</u>, defendant here did not repeatedly refuse to identify
27   himself.  Instead, he provided Deputy Shrum with a name and date of
28   birth at the first request, without protest.  (Def. Ex. B at 01:49 to

8

03:17.)  Because defendant consented to providing his identification, the time that it took for defendant to write his name and date of birth on an index card is not time that Deputy Shrum added to the stop.  Furthermore, as the body-worn camera footage confirms, Deputy Shrum's request, followed by defendant providing identification, were coextensive with the conversation with the driver about his travel plans, broken headlight, and potential electrical issues —all of which was within the mission of the stop.  (Id.)

Deputy Shrum asked for defendant's identity about one minute into the stop.  (Def. Ex. B at 00:49 to 01:49.)  Because Defendant took an additional two minutes and 20 seconds to write down his information, Deputy Shrum began running record checks about three minutes and 20 seconds into the stop.  (Id. at 04:10.)  It took him about one minute and 20 seconds.  (Id. at 04:45 to 06:04.) Therefore, only four minutes and 40 seconds elapsed before Deputy Shrum developed reasonable suspicion that defendant committed a crime under California law (providing false information to a peace officer), as explained below.

A stop becomes unlawfully prolonged only when "tasks tied to the traffic infraction are —or reasonably should have been —completed." Rodriguez, 575 U.S. at 354.  In four minutes and 40 seconds, the tasks tied to the stop were not completed nor should they have been. As the footage demonstrates, Deputy Shrum used that time to complete tasks within the "mission" of the traffic stop.  Deputy Shrum therefore did not add time to the stop before developing reasonable suspicion of another crime.  See United States v. Mendez, 476 F.3d 1077, 1080 (9th Cir. 2007) (questing by one officer while another officer ran record checks could not have "expanded the duration of

1  the stop since the stop would, in any event, have lasted until after

2  the check had been completed"); see also United States v. Contreras,

3  No. 2:21-cr-00569-RGK-1, Order re: Mot. to Suppress at 4, Dkt. No. 46

4  (C.D. Cal. May 18, 2022) (finding no unlawfully prolonged stop when

5  the "total time that the officers spent making [a] call to [a]

6  detective (mere seconds) and discovering [a] loaded magazine (mere

7  minutes) is coextensive with the time it reasonably could have taken

8  to complete the tasks tied to investigating the traffic violations").

9          4.   Asking Whether Defendant Was on Probation Was Not an

10                 Unrelated Inquiry and Did Not Add Time to the Stop

11      Defendant also takes issue with Deputy Shrum asking him whether

12  he was on probation or parole, after Deputy Shrum saw a knife inside

13  the car.  This question did not impermissibly prolong the stop for at

14  least two reasons.  First, because Deputy Shrum posed this question

15  as defendant was voluntarily writing down his information, it did not

16  add any time to the stop.  (Def. Ex. B at 02:54 to 03:18.)  The Court

17  in Rodriguez held that an officer "may conduct certain unrelated

18  checks during an otherwise lawful traffic stop" so long as it is not

19  done "in a way that prolongs the stop."  575 U.S. at 355; see United

20  States v. Crenshaw, 2020 WL 6873422, at *4 (N.D. Cal. Nov. 23, 2022)

21  (holding that an officer's inquiry about a passenger's probation

22  status, simultaneous to a conversation with the driver, was lawful

23  under Rodriguez).  Second, the question was a "negligibly burdensome

24  precaution" that Deputy Shrum took to complete his mission safely

25  after seeing a knife in the car, which created a new safety concern.

26  (Def. Ex. B at 02:54 to 03:17.)

27      Defendant mischaracterizes asking about a person's probation

28  status by asserting that it is akin to an "ex-felon check," citing

United States v. Evans, 786 F.3d 779 (2015).  (Mot. to Suppress at 9.)  The Ninth Circuit explains that an "ex-felon check," also known as a "felon registration check," is a "computer check to see if a person is properly registered as a felon [under] state law" and "only occurs after the officers know whether the person they pulled over is a felon."  Hylton, 30 F.4th at 847.  Running a felon registration check is therefore unlike merely asking a person if he is on probation.  The Court in Hylton concluded that an "ex-felon check" is aimed at detecting ordinary criminal wrongdoing, but a criminal history check is justified for officer safety.  Id. at 847–48.  If an officer can run a criminal history check to determine whether a driver or passenger is a convicted felon, then an officer must be entitled to take an even more minimally intrusive measure of simply asking whether a person is on probation.  Deputy Shrum's fleeting question did not transform this lawful stop into an unlawful seizure.

### 5.   Within Five Minutes, Deputy Shrum Developed Reasonable Suspicion that Defendant Violated California Law

After defendant provided false information about his identity, Deputy Shrum had new grounds to continue investigating.  If new grounds for suspicion unfold during a stop, then the stop may be prolonged accordingly to investigate the new suspected crimes.  See, e.g., United States v. Mayo, 394 F.3d 1271, 1276 (9th Cir. 2005) (holding that a "period of detention was permissibly extended because new grounds for suspicion of criminal activity continued to unfold").  Reasonable suspicion "is not a particularly high threshold to reach," and allows officers to make "commonsense judgments and inferences about human behavior" and "draw on their own experience and specialized training."  United States v. Valdez-Vega, 738 F.3d 1074,

1078 (9th Cir. 2013) (en banc); <u>Kansas v. Glover</u>, 140 S. Ct. 1183, 1188 (2020).  Here, defendant provided a name and date of birth to Deputy Shrum.  He may not have been obligated to do so; but once defendant consented to identifying himself, he was obligated to provide his true identity, as California law criminalizes providing false identification to a peace officer.  <u>See</u> Cal. Pen. Code § 148.9.  But the information that defendant provided did not yield any results when Deputy Shrum ran it in his system.  In Deputy Shrum's experience, it is rare for a name to not generate any results (Shrum Decl. ¶ 4), and individuals may be motivated to hide their identity from law enforcement (especially individuals with warrants, like defendant).  At this point in stop, Deputy Shrum had independent reasonable suspicion that defendant violated California Penal Code § 148.9 and could expand the scope of the stop to investigate further.

Deputy Shrum in fact investigated further and asked defendant for his identity a second time.  This time, defendant provided a different name (Alan Mauricio Santacruz instead of Alan Mauricio) and a different date of birth.  (Def. Ex. B at 12:57 to 13:20; Shrum Decl. ¶ 6.)  Defendant also stated that he has had a California identification issued, confirming that he should appear in the database.  (Shrum Decl. ¶ 6.)  This information also failed to yield any results.  (<u>Id.</u> at ¶ 7.)  Deputy Shrum therefore had probable cause supporting that defendant violated California Penal Code § 148.9.  <u>See</u> <u>Kaley v. United States</u>, 571 U.S. 320, 338 (2014) (Probable cause "is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." (cleaned up) (quoting <u>Florida v. Harris</u>, 568 U.S. 237, 244 (2013))).  And he was justified to arrest defendant.  <u>See</u>

12

1    Cal. Pen. Code § 836(a)(1) (authorizing an officer to make a

2    warrantless arrest for a "public offense" committed in the officer's

3    presence).

4               6.   Deputy Shrum Learned Additional Facts that Further

5                    Justified Extending the Stop

6         After developing probable cause to arrest defendant for

7    providing false information to a peace officer, Deputy Shrum

8    discovered additional facts warranting an extended stop.  For

9    instance, inside the car in plain view, Deputy Shrum observed a

10   straw, which he recognized as a "tooter" (drug paraphernalia), and a

11   torch butane lighter, which he knows to be a preferred lighter among

12   drug users.  (Def. Ex. B at 13:35 to 13:43; Shrum Decl. ¶¶ 8-9.)

13   Following this observation, Deputy Shrum asked the driver whether

14   there were drugs in the car.  (Def. Ex. B at 13:43 to 14:56.)  The

15   driver admitted that there was at least "marijuana wax" and consented

16   to a search of the car, which yielded an unlawful switchblade, a

17   small container of suspected fentanyl, and a glass pipe.  (Def. Ex. A

18   at 5-6.)

19        It is undisputed that Defendant consented to a search of his

20   person.  (Def. Ex. A at 5.)  Inside defendant's pockets, Deputy Shrum

21   found seven postal keys, mail belonging to a P.C., and a California

22   driver's license containing the name of Y.A.  (Id.)  Deputies also

23   eventually learned defendant's true name and discovered that he had

24   an outstanding warrant for his arrest.  (Id.)  Each of these facts

25   also justified extending the scope of the investigation —and

26   arresting defendant.

27

28

**B. Deputy Shrum Lawfully Searched the Black Adidas Backpack**

The Court should not exclude the contents of the black Adidas backpack because the backpack's search was justified by probable cause and reasonably within the scope of the driver's consent to search the car.

1. Deputy Shrum Had Probable Cause to Search the Backpack

Deputy Shrum searched the black Adidas backpack inside the driver's car after finding the following items in the car: a "tooter," a butane torch lighter, an unlawful switchblade, and a small container of a white chalky substance (suspected fentanyl). (Def. Ex. B at 13:35 to 13:43; 15:40; 17:57 to 18:10.)  It was also after finding postal keys and mail in defendant's pockets.  (See Def. Ex. B at 11:57 to 11:59.)  Discovering each of these items provided probable cause —a "fair probability" —that a further search of the car would reveal contraband or evidence of a crime.  Illinois v. Gates, 462 U.S. 213, 238 (1983).  "[P]olice officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search".  Wyoming v. Houghton, 526 U.S. 295, 303 (1999) ("Passengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport in cars . . . .").  The backpack was certainly capable of concealing narcotics, paraphernalia, or illegal weapons —the objects of Deputy Shrum's search.  Therefore, regardless of the driver's consent, Deputy Shrum was justified in searching the black Adidas backpack.

        2.   Even if Deputy Shrum Did Not Have Probable Cause to Search the Backpack, a Search of the Backpack Was Reasonably Within the Scope of the Driver's Consent

Even if the Court concludes that Deputy Shrum lacked probable cause to search the backpack, the search was still lawful because the driver consented to search of his car. (Def. Ex. A at 5.)  Before consenting, the driver explained, "[Defendant] threw something in the backseat . . . I really don't know what it was . . . Everything of mine in there is loose clothes.  Other than that, everything of mine is in the trunk . . . [Defendant] threw a box and something else back there."  (Ex. B at 14:13 to 14:57.)  Defendant argues that the driver's explanation was "unambiguous" and that the "something else" was clearly defendant's backpack.  (Mot. to Suppress at 14.)  But "something else" is patently vague.  "Back there" is also vague as the driver could have been referring to the trunk.  The driver did not identify the "something else," and Deputy Shrum did not know what "something else" meant.  (Shrum Decl. ¶ 10.)  Even after discovering the stolen mail and mail carrier uniform inside of the backpack, Deputy Shrum did not know to whom they belonged.  (Id.)  This fact is corroborated by Deputy Shrum asking the driver and defendant what they do for a living and later asking defendant if the black Adidas backpack belonged to him.  (Def. Ex. B at 19:50 to 20:05; 28:11 to 28:26.)

Therefore, when the driver gave Deputy Shrum consent to search his vehicle, Deputy Shrum reasonably believed that his consent extended to the black Adidas backpack.  Even if that belief was mistaken because the backpack belonged to defendant, it was a reasonable mistake, and therefore the search was still lawful.  The law recognizes that "searches and seizures based on mistakes of fact

15

can be reasonable."  Heien v. North Carolina, 574 U.S. 54, 61 (2014)

("To be reasonable is not to be perfect, and so the Fourth Amendment

allows for some mistakes on the part of government officials, giving

them fair leeway for enforcing the law in the community's

protection.").

### C. The Exclusionary Rule Should Not Apply Because Deputy Shrum Did Not Act Deliberately, Recklessly, or with Gross Negligence

It is well-settled that the exclusionary rule is not automatic.

Herring v. United States, 555 U.S. 135, 140 (2009) ("Exclusion has

always been our last resort, not our first impulse." (cleaned up)).

The exclusionary rule should be applied only when it "serves to deter

deliberate, reckless, or grossly negligent conduct."  Id. at 144.

Here, Deputy Shrum acted reasonably and in good faith.  He was not on

a fishing expedition to uncover evidence of a crime but rather

conducted a lawful traffic stop and asked questions reasonably aimed

at completing the mission of the stop and addressing his safety

concerns.  Under these circumstances, there would be little to no

deterrence affected by suppression, and the cost of exclusion would

be substantial.  See Davis v. United States, 564 U.S. 229, 238 (2011)

("[W]hen the police act with an objectively reasonable good-faith

belief that their conduct is lawful, or when their conduct involves

only simple, isolated negligence, the deterrence rationale loses much

of its force, and exclusion cannot pay its way." (cleaned up)).

### D. An Evidentiary Hearing Is Not Warranted

Defendant has not requested an evidentiary hearing, nor is one

warranted.  A defendant "must demonstrate that a significant disputed

factual issue exists such that a hearing is required."  United States

v. Howell, 231 F.3d 615, 621 (9th Cir. 2000).  Defendant has not

identified any significant disputed factual issue.  The outcome of
defendant's motion turns not an issue of fact but rather on the
Court's analysis of the relevant law.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests
that this Court deny defendant's motion to suppress without an
evidentiary hearing.